The NEW YORK LIFE INSURANCE COMPANY, Respondent, v. D. M. GOODRICH, Appellant.,

| 74 | 355 |
| 86 | 631 |

Kansas City Court of Appeals, April 4, 1898.

1. **Evidence**: CONTRACT IN DUPLICATE: LOSS OF ONE PART: PAROL. When an instrument is executed in duplicate the loss of all its parts must be proved in order to let in secondary evidence of its contents, unless the adverse party holding the remaining part of a contract refuses to produce it.

2. **Appellate and Trial Practice**: NEW TRIAL: DISCRETION OF COURT: INTERFERENCE. Without a motion a trial court has inherent power to grant a new trial where it believes there has been a failure of justice, and the appellate court will not interfere with such discretion unless there has been an abuse thereof.

3. **Master and Servant:** COMPENSATION FOR SERVICES: EXPRESS AGREEMENT. All services rendered by an employee during the period for which he is employed of a nature similar to his regular duties are presumed to be paid for by his salary, and such presumption can only be overcome by an express agreement for extra compensation.

4. **Insurance:** SOLICITOR'S COMPENSATION: SETTLEMENT WITH INSURED: BUYING PEACE. Where a solicitor's commission in securing a policy of insurance depended upon whether the policy was valid, the mere fact that the company settled the policy by the payment of a portion thereof will not constitute such recognition of its validity as to entitle the solicitor to his commission, since the company had a right to buy its peace.

*Appeal from the Jackson Circuit Court.*—HON. JNO. W. HENRY, Judge.

AFFIRMED.

WILLIAM J. SCOTT for appellant.

(1) Notice to produce an original paper is not required, when the form of the action is such as to give notice that its production will be necessary to contradict the secondary proof of the other side, if incorrect. Neally v. Greenough, 25 N. H. 325; Doe v. Wainwright, 5 Ed. & El. 520; Hammond v. Hopping, 13 Wend. 503; Levit v. Simes, 3 N. H. 14; Harding v. Kretsinger, 17 Johns. 293; Walker v. Newhouse, 14 Mo. 374; Hart v. Robinett, 5 Mo. 11; Cross v. Williams, 72 Mo. 581; Conly v. Gale, 61 Ala. 116; McConey v. Wallace, 22 Mo. App. 377; Walker v. Newhouse, 14 Mo. 374; 114 Mo. 437; 72 Mo. 577; 101 Mo. 378; 39 Mo. App. 575 and 214; 105 Mo. 411; How v. Hall, 14 East 276; Postel v. Palmer, 71 Iowa, 157. (2) Where services are rendered and party accepts them, or the results thereof, there is an implied contract to pay what they are reasonably worth, except there is an express contract to the contrary. Dougherty v. Whitehead, 31 Mo. 257; Hart v. Hart's Adm'r, 41 Mo. 441;

McMullan v. Page 71 Wis. 655; Addison on Contracts, 23; Day v. Caton, 119 Mass. 513; Holmes v. Board of Trade, 81 Mo. 137; Leach v. R. R., 86 Mo. 27; Hart Hart's Adm'r, 41 Mo. 441; Smith v. Myers, 19 Mo. 433; Hopper v. Oldis, 7 Atl. Rep. (N. J.) 349. (3) In employment of the nature in question, the rule is different from menial service, and the employer is not entitled under such contract to employee's entire time, and he may accept other service not inconsistent with his employer's interest. Jeffreys v. King, 34 Md. 217.

MILLS, SMITH & HOBBS and DOBSON & McCUNE for respondent.

(1) There can be no question but that the trial court erred in permitting the defendant to give oral testimony as to the contents of the contract under which he claimed a commission on the Eaton policy, and the action of the court in granting a new trial must be sustained on this ground if on no other. Matthews v. R. R., 66 Mo. App. 663; Greenl. on Ev., sec. 558; Rex v. Castleton, 6 Term R. 236; Doe v. Pullman, 3 Q. B. 622; 1 Greenl. on Ev., sec. 82. (2) The fact that a writing is in the possession of the adverse party does not change its character; and its absence must be accounted for by notice to the other party to produce it, or in some other legal mode, before secondary evidence of the contents can be received. Greenl. on Ev., secs. 87 and 558; Coffman v. Ins. Co., 57 Mo. App. 647; Sheehan v. Ins. Co., 53 Mo. App. 351; Rex v. Rawden, 8 B. & C. 708; Sebree v. Dorr, 9 Wheat. 558; Bullock v. Koon, 9 Cowen, 30; Mather v. Goddard, 7 Conn. 304; Rank v. Shewey, 4 Watts, 218; Northrup v. Jackson, 13 Wend. 86; Vinal v. Bunell, 16 Pick. 401, 407. (3) It was said by Judge SMITH, in the case of Ensor v. Smith, 57 Mo. App. 596, that "a motion for a new

trial is addressed to the equitable discretion of the court to prevent palpable wrong.'' Hewitt v. Steele, 118 Mo. 473; Lovell v. Davis, 52 Mo. App. 347; Williams v. Circuit Ct., 5 Mo. 248; State ex rel. v. Adams, 84 Mo. 310; Simpson v. Blunt, 42 Mo. 542; Richmond, Adm'r, v. Pogue, 36 Mo. 313. It is an inherent power of every judicial tribunal to correct an error which it may have committed when no positive rule of law forbids it. McCabe v. Lewis, 76 Mo. 301; McShane v. Sanderson, 108 Mo. 316; State v. Horner, 86 Mo. 71; Ittner v. Hughes, 133 Mo. 679; Ensor v. Smith, 57 Mo. App. 584; Hewitt v. Steele, 118 Mo. 463, 476; Bunyan v. R'y, 127 Mo. 12; McCullough v. Ins. Co., 113 Mo. 606; Longdon v. Kelly, 51 Mo. App. 572; Mason & Henry v. Onan, 67 Mo. App. 290; Eidemiller v. Kump, 61 Mo. 340. (4) The presumption of law is that all services rendered by an employee during the period for which he is employed, of a similar nature to those of his regular duties, are paid for by his salary, and to overcome this presumption he must show an express agreement for extra pay. Cany v. Halleck, 9 Cal. 189; Carr v. Coal Co., 25 Pa. St. 337; Ross v. Hardin, 79 N. Y. 84; Pew v. Bank, 130 Mass. 391; Guthrie v. Merrill, 4 Kan. 187; Stebbins v. Waterhouse, 58 Conn. 370; 20 Atl. Rep. 480; Sidway v. Park Comm'rs, 120 Ill. 496; 11 N. E. Rep. 852; Decatur v. Vermillion, 77 Ill. 315; Leach v. R. R., 86 Mo. 27; Bradbury v. Helms, 92 Ill. 35; Wallace v. De Young, 98 Ill. 638; Hoyt v. Fuller, 19 N. Y. Sup. 962; Koplitz v. Powell, 14 N. W. Rep. (Wis.) 831. (5) The court erred in giving instruction number 2 to the jury. It is as follows: ''The fact that the Eaton policy on a claim by his widow of the amount of the policy was settled by the company by the payment of the $4,000 was a recognition of the validity of the policy, and it is bound for the commission to the defendant.'' It is

well established that an offer of compromise can not be used as evidence in the case in which it is made. 1 Greenl., sec. 192. To the same effect is Wharton on Evidence, section 1090.

SMITH, P. J.—This is a suit for money had and received. The defendant by his answer set up several counterclaims. There was a trial by a jury which resulted in a verdict for the defendant.

STATEMENT.

The plaintiff filed a motion to set the same aside which was sustained on the ground that there was error committed in the admission of evidence and the giving and refusing of instructions. From the order setting aside the verdict and the granting of the new trial the defendant has appealed.

One of defendant's counterclaims was for the sum $200.20 for commission for writing a policy of insurance on the life of N. T. Eaton. It was disclosed by the defendant's own testimony that he based his right to commission for writing this insurance on a written contract with plaintiff which had been executed in duplicate. The defendant testified that he had lost his duplicate part, and thereupon the defendant, against the objections of the plaintiff, was permitted to testify as to the contents of the contract so in duplicate. No notice had been given plaintiff requiring the production by it of the duplicate part retained by it.

The rule is elemental that when an instrument is executed in duplicate the loss of all its parts must be proved in order to let in secondary evidence of its contents. Hence it is that when one of the duplicate parts in the custody of one of the parties is destroyed he can not give parol evidence of its contents when the other duplicate part is in the possession of the adversary party, unless the latter refuses to produce it after proper

EVIDENCE: contract in duplicate: loss of one part: parol.

notice for that purpose. But we are relieved of a further discussion of this point by what was said by us in Matthews v. R'y, 66 Mo. App. 663.

The ruling there made must be repeated here.

It is however insisted that since the plaintiff suggested no specific ground of objection to the introduction of parol proof of the contents of said contract that this court will not review the action of the trial court in granting the new trial on the ground of the admission of such proof. It is perhaps a sufficient answer to this contention to say that a motion for a new trial is one addressed to the equitable discretion of the court to prevent palpable wrong. But the court without such motion has the inherent power to grant a new trial on account of the causes specified in the order. If it believes that there has not been a fair trial of the cause and consequently a failure of justice it has the undoubted power to set aside the verdict on its own motion. Ensor v. Smith, 57 Mo. App. 596. And the appellate courts will not revise the discretion of the trial courts on granting or refusing a new trial, except in those cases where it is apparent there has been an abuse of such discretion. The presumption will be indulged in favor of the correctness of the action of the trial court in the granting a new trial. Hewitt v. Steele, 118 Mo. loc. cit. 473. To warrant the reversal of an order for a new trial it must clearly appear that no error occurred that may possibly have been perjudicial to the party who applied for the new trial. Ittner v. Hughes, 133 Mo. 679. In view of the principles and rules of practice just alluded to, we are constrained to think that we are not authorized to interfere with the action of the trial court in granting the new trial on the ground of the admission of improper evidence.

*APPELLATE and trial practice: new trial: discretion of court: interference.*

It further appears that the trial court granted a new trial on the further ground that it had erred in refusing the following instructions which were requested by plaintiff, to wit: "1. The jury are instructed that the plaintiff can not recover any extra compensation beyond his agreed salary as cashier unless he shows and proves an express contract with the insurance company, or its duly authorized agent, to that effect. 2. If the defendant was under a regular monthly salary as cashier from the plaintiff at the time he claims extra pay for acting as inspector of risks, then it is presumed that all the services he performed during the time he was acting as cashier, whether ordinary or extraordinary, were paid for by said salary, and to overcome this presumption the defendant must show an express agreement for extra pay, otherwise he can not recover."

MASTER and servant: compensation for services: express agreement.

And in giving the following instruction for the defendant, to wit: If you find that defendant was employed by the company as its cashier at a salary of $150 per month, and that that employment did not embrace services as inspector of risks, and that while so employed as cashier he was requested to act for the company as inspector of risks at Kansas City, that he is entitled to compensation for such additional service, and, in the absence of an agreement as to what that compensation should be, you should allow him for such service what it is reasonably worth, as shown by the testimony.

These instructions it is seen assert opposite theories. If the former are correct expressions of the law the latter, which were given, are erroneous. The evidence tended to show that the defendant was employed by the plaintiff in the capacity of cashier in its Kansas City office, at a salary of $150 per month; that shortly after his employment Halbert, the plaintiff's Kansas

City appraiser of real estate and inspector of risks, requested defendant to make the inspections for him, as he was so much absent that he could not well attend to the same. It appears that the appraiser performed the duties of inspector without additional compensation therefor. There was no promise by any officer or agent of plaintiff to pay the defendant for the inspection. The defendant in connection with the performance of the usual duties of cashier also inspected risks for the plaintiff in accordance with the request of Halbert. About the time the defendant resigned his employment as cashier he requested compensation for his services as inspector. There was evidence adduced which tended to show that the defendant's duties of cashier included whatever services the plaintiff might require of him. It further appears that during the fourteen months the defendant inspected risks that he drew his salary as cashier with great regularity but at no time made any claim for compensation for his services as inspector. He did not claim that he was inspector but that he performed the duties of an inspector at the request of Halbert. Just about the time he quit plaintiff's employment as cashier he applied for the position of inspector. There was also testimony adduced to the effect that defendant told a co-employee that he was making inspections at the request of Halbert, the appraiser.

The question remains to be considered whether or not, under the evidence, a brief summary of which has just been given, the action of the trial court with respect to the giving and refusing the instructions hereinbefore set forth was error. The presumption of the law is that all services rendered by an employee during the period for which he is employed, of a similar nature to those of his regular duties, are paid for by his salary, and to overcome this presumption he must

show an express agreement for extra compensation. Carey v. Hallock, 9 Cal. 189.    Leach v. R'y, 86 Mo. 27, was where the plaintiff was employed as claim agent and assistant to the general attorney at a regular salary.    He sued for extra compensation for services as notary.    He qualified as notary after his employment by defendant.    In the course of the opinion it is said: "*Prima facie*, respondent sold and hired to defendant his entire time for this salary, fixed and agreed upon between them, and the rendition of service by respondent as notary in and about the defendant's business during the said time did not make defendant liable for statutory fees therefor, without some agreement or understanding or line of conduct between the parties, showing they were not to be included.    Plaintiff's earnings, during the time of such employment, would belong to the employer."

The president of a bank superintended repairs upon a building belonging to the bank, it being left in his hands by the directors.    He sued for extra pay for attention to the building, he having devoted all his time to it.    There was no evidence of any understanding that he should act in any capacity other than as president and director.    *Held*, that he could not recover. Pew v. Bank, 130 Mass. 391.

"A person employed as a secretary of a private corporation, at a fixed rate of compensation, can not demand extra pay for services in that capacity, which were not anticipated at the time of his employment, or which were not enumerated in the charter or by-laws.    The fair construction of his contract is, that he will do whatever his employers may have occasion to employ a secretary about."    Carr v. Coal Co., 25 Pa. St. 337.    The application of the principle asserted by the plaintiff's refused instructions will be found further illustrated by reference to the

following adjudications.  Ross v. Hardin, 79 N. Y. 84; Sedway v. Commissioners, 120 Ill. 496; Bradbury v. Helms, 92 Ill. 35; Stebbins v. Waterhouse, 58 Conn. 370.  It therefore seems to us that the trial court erred in the giving and refusing of said instructions and that its action in that regard justified it in disturbing the verdict for that reason.

If the defendant's right under his contract to commission on the Eaton policy depended upon whether or not that policy was valid, then we can not approve the court's instruction number 2 which, in substance, told the jury that if plaintiff settled that policy by the payment of four tenths of the amount thereof, that this was such a recognition of its validity as entitled defendant to commission thereon.  It must be permitted to men to buy their peace without prejudice to them.  The policy of the law favors amicable settlements of controversies and therefore protects them.  Such settlements do not admit liability.  The purchase price of peace can not be regarded as an admission of a right on the other side.  1 Greenl. Ev., sec. 192; Wharton, Ev., sec. 1090.  This instruction gives the fact of the compromise settlement an effect to which we must think it was not entitled.  It seems to us preposterous to hold that the compromise entered into between the beneficiary in the policy and the plaintiff should as to the defendant have the effect to conclusively establish the validity of the policy and the plaintiff's liability for the commission claimed thereon by the defendant.  The giving of this instruction we think was error.

It results that the order of the court in setting aside the verdict and granting a new trial must be affirmed.  All concur.

*Marginalia:* INSURANCE: solicitor's compensation: settlement with insured: buying peace.